No. 78.—YOUNG P. OUTLAW and another, plaintiffs in error, *vs.* NICHOLAS REDDICK and others.

[1.] When a party is surety on a bond given by a Deputy Sheriff to his principal, and has taken a mortgage on personal property for his indemnity, and the High Sheriff and the Deputy have collected money for which the High Sheriff is sued, and the Deputy has departed the jurisdiction, and

Outlaw and another *vs.* Reddick.

the mortgage property has come into the possession of a third person upon a pretended claim of right, who is charged with an intention to remove it beyond the jurisdiction of the Courts, a Court of Equity will restrain him by injunction, and require bond and security for its forthcoming, to answer to the claim of the mortgage.

In Equity, in Lee Superior Court. Decision on demurrer, by Judge WARREN. May Term, 1852.

Edward O. Sheffield was elected Sheriff of Dooly County, and appointed Young P. Outlaw, his deputy; requiring of him a bond in the sum of $2,500 for the faithful discharge of his duty as deputy; on which bond, Nicholas Reddick and Henry Pettee, became sureties. To indemnify his sureties from all loss, by reason of their suretyship, Outlaw executed to them a mortgage upon two negroes, and 125 head of cattle.

Subsequently, the Court House of Dooly County was consumed by fire, and in it was destroyed the judgments, executions, &c., and also a large sum of money, as alleged by Sheffield and Outlaw, which had been collected by them, on these executions. Suits were brought by the plaintiffs in *fi. fa.* against Sheffield, many of which are still pending. Judgments have been obtained on others, against Sheffield and his sureties.

The sureties of Outlaw, filed a bill, *quia timet*, alleging the above facts, and farther, that they were ignorant what portion of the said funds were collected by Outlaw, or what would be the extent of their liability as sureties; that Young P. Outlaw, had fled to parts unknown; and that one of the negroes mortgaged had been run off by one Meshac N. B. Outlaw, to Lee County, under some pretended claim of right, and with the intention, as complainants believe, to remove the said negro entirely beyond the reach of complainants. The prayer was to restrain M. N. B. Outlaw from removing the negro specified beyond the reach of the Court, and requiring of him bond for the forthcoming of the property, to answer the complainant's mortgage.

To this bill a demurrer was filed—

1st. Because there is no equity in the bill.

2d. Because the bond executed by the Deputy, on which complainants are sureties, is absolutely void.

3d. Because the liability of complainants is not such as will be protected by " *quia timet,*" in a Court of Chancery.

The Court overruled the demurrer, and this decision is assigned as error.

W. H. HAWKINS, for plaintiffs in error.

SULLIVAN & BROWN, for defendant in error.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The demurrer verifies the facts stated in the bill. The complainants charge, that they are sureties for Y. P. Outlaw, as Deputy Sheriff of Dooly County, on a bond given to his principal, to secure the faithful execution of his duties; that for their indemnity, he executed to them a mortgage on two slaves and other property; that large sums of money were collected by the Sheriff of Dooly County, and his deputy, which they (the Sheriffs) allege were destroyed by fire when the Court House of that County was burned; that as much as $2,500, was collected by their principal—but the precise sum, they do not know; that suits have been instituted for this money against the Sheriff—some of which are now pending, and others have been reduced to judgment; that their principal, the Deputy Sheriff, has fled to parts unknown; that one of the negroes mortgaged to the complainants, has been run off under some pretended claim of right, into Lee County, with the intention, as they believe, of removing him entirely beyond their reach, by the defendant, one Meshac N. B. Outlaw, and they pray that he may be enjoined from removing this negro beyond the jurisdiction of the Court, and that he be decreed to give bond and security for the forthcoming of the slave, to respond to their mortgage.

We think the case made authorizes the relief asked, until an answer and a hearing on the merits. Upon the hearing, the whole matter will be within the control of the Court. The com-

plainants show facts sufficient to satisfy a Chancellor that their principal will be in default, and that they may become chargeable on his bond. They show a lien by mortgage on the negro, in the hands of the defendant. This lien is the right upon which they plant themselves, and by virtue of which they have a standing in Equity. They also aver the departure of their principal from the jurisdiction, and an intention on the part of the defendant to eloign the property. Under such circumstances, it is within the province of Chancery to lay its hand upon the property, and provide for its appearance to respond to their mortgage. The relief sought, does not determine the title to the slave, nor does it divest the possession; upon the hearing, the defendant will stand upon all his rights. If the facts charged, are proven on the trial, the relief ought to be permanent. When a debtor assigns a future interest in personal property to his creditors, the latter may come into a Court of Chancery to have the property secured to their future use. *Story's Eq. Jurisp.* §§846, 603, *note. Johnson vs. Mills,* 1 *Vesey,* 282, 283. This principle is applicable to this case. That an injunction will be granted to protect mortgaged property, before the mortgaged debt is due. (See *Salmon vs. Clagett,* 3 *Bland's Ch. R.* 180.)

Let the judgment be affirmed.